# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# STATESVILLE DIVISION
# CIVIL ACTION NO. 5:12-CV-00162

| | |
|---|---|
| DIANA L. MADDEN, | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| v. | ) **ORDER** |
| | ) |
| EXPERIAN INFORMATION SOLUTIONS, INC., EQUIFAX INFORMATION SERVICES, LLC, COUNTRYWIDE HOME LOANS, INC., REAL TIME RESOLUTIONS, INC., & GMAC MORTGAGE, LLC. | ) |
| | ) |
| **Defendants.** | ) |

Pro se Plaintiff Diana Madden ("Madden") instituted the instant action against Experian Information Solutions, Inc. ("Experian"), Equifax Information Services, LCC ("Equifax"), Countrywide Home Loan, Inc. (n/k/a BAC Home Loans Servicing, LP) ("Countrywide"); Real Time Resolutions, Inc. ("Real Time"), and GMAC Mortgage, LLC ("GMAC").

Madden has alleged violations of the Fair Credit Reporting Act ("FCRA") against Experian and Equifax. (Doc. 1, at ¶ 56). Madden alleges that Countrywide, Real Time, and GMAC Mortgage, LLC have violated the North Carolina Debt Collection Act ("NCDCA"). (Doc. 1, ¶ 66).

Before the Court is GMAC's Motion to Dismiss (Doc. 10), Real Time's Motion to Dismiss (Doc. 31), and Countrywide's Motion for Judgment on the Pleadings (Doc. 45). GMAC, Real Time, and Countrywide all claim that Madden's NCDCA claims are preempted by the FCRA. Plaintiff has responded to all motions. (Docs. 33, 35, 47). GMAC and Countrywide filed replies. (Docs. 34, 50).

1

Madden's allegations involving GMAC, Real Time, and Countrywide involve data furnished about her to Experian and Equifax. (Doc. 1, at ¶¶ 28-31, 33-34, 41, 43, 46, 50-51, 69). Madden claims she disputed the debts with GMAC, Real Time, and Countrywide and that their responses conflicted with information they had furnished to Experian and Equifax. (Doc. 1, at ¶¶ 30-31). Madden claims that GMAC, Real Time, and Countrywide repeatedly furnished inaccurate information to Experian and Equifax. (Doc. 1, *passim*). However, Madden also claims that "Experian permitted Real Time to pull Plaintiff's consumer report without a permissible purpose" several times. (Doc. 44, at ¶ 44).

I. **Relevant Legal Standards**

    A. **Motion for Judgment on the Pleadings Under Rule 12(c) and Motion to Dismiss Under Rule 12(b)(6)**

A court applies the same standards as set forth in the case law surrounding a motion to dismiss under 12(b)(6) when reviewing a Rule 12(c) motion for judgment on the pleadings. *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999).

Under a motion to dismiss under 12(b)(6), the court must accept as true all factual allegations in the pleading, *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam), and all reasonable inferences must be drawn in the non-movants favor, *Ibarra v. United States*, 120 F.3d 472, 474 (4th Cir. 1997). This requirement applies only to facts, not legal conclusions, however. *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009).

Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Although the complaint need only "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests," this obligation "requires more than labels and conclusions, and a formulaic recitation of

the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted).

Rule 12(b)(6) protects against meritless litigation by requiring sufficient factual allegations "to raise a right to relief above the speculative level" so as to "nudge[ ] the[ ] claims across the line from conceivable to plausible." *Twombly*, 500 U.S. at 555, 570; *see Iqbal*, 556 U.S. at 662. Under *Iqbal*, the court performs a two-step analysis. First, it separates factual allegations from allegations not entitled to the assumption of truth (i.e., conclusory allegations, bare assertions amounting to nothing more than a "formulaic recitation of the elements"). Second, it determines whether the factual allegations, which are accepted as true, "plausibly suggest an entitlement to relief." 556 U.S. at 681.

"A document filed *pro se* is 'to be liberally construed' . . . [and] 'must be held to less stringent standards than formal pleadings drafted by lawyers.'" *Erickson*, 551 U.S. at 94 (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). However, *Erickson* does not "undermine *Twombly's* requirement that a pleading contain 'more than labels and conclusions.'" *Giarratano v. Johnson*, 521 F.3d 298, 304 n.5 (4th Cir. 2008) (quoting *Twombly*, 550 U.S. at 555)).

Only "in the relatively rare circumstances where facts sufficient to rule on an affirmative defense are alleged in the complaint" may a court grant a motion to dismiss based on an affirmative defense. *Goodman v. Praxair, Inc.*, 494 F.3d 458, 464 (4th Cir. 2007). However, it is appropriate to dismiss when "all facts necessary to the affirmative defense 'clearly appear on the face of the complaint.'" *Id.* (emphasis and alteration omitted) (quoting *Richmond, Fredericksburg & Potomac R.R. v. Forst,* 4 F.3d 244, 250 (4th Cir.1993)).

B. **Preemption under the FCRA**

The parties dispute which preemption provision of the FCRA governs. GMAC, Real Time, and Countrywide argue that 15 U.S.C. § 1681t(b)(1)(F) governs Madden's claims.[1] Madden argues that her claims are excepted from preemption under 15 U.S.C. § 1681h(e).

"The FCRA is a comprehensive statutory scheme designed to regulate the consumer reporting industry." *Ross*, 625 F.3d at 812 (citing 15 U.S.C. § 1681(a)). "CRAs provide a critical economic service by collecting and transmitting consumer credit information." *Id.* However, CRA's also make mistakes by reporting inaccurate information. *Id.* Congress enacted the FCRA to respond, in part, to this issue. *Id.* "The FCRA 'has been drawn with extreme care, reflecting the tug of the competing interests,' and courts must respect the balance struck by Congress when interpreting its provisions.'" *Id.* (quoting *Nelson v. Chase Manhattan Mortg. Corp.*, 282 F.3d 1057, 1060 (9th Cir. 2002)).

Originally, the FCRA "preempted state laws only 'to the extent that those laws are inconsistent with any provision of the [FCRA]." *Id.* (quoting 15 U.S.C. § 1681t(a)). However, as originally enacted, the FCRA contained § 1681h(e), which provided that:

> Except as provided in sections 1681n and 1681*o* of this title, no consumer may bring any action or proceeding in the nature of defamation, invasion of privacy, or negligence with respect to the reporting of information against any consumer reporting agency, any user of information, or any person who furnishes information to a consumer reporting agency, based on information disclosed pursuant to section 1681g, 1681h, or 1681m of this title, except as to false information furnished with malice or willful intent to injure such consumer.

15 U.S.C.A. § 1681h(e) (1976).

However, Congress amended the FCRA in 1996, adding 15 U.S.C. § 1681t(b) and amending § 1681(e). *Ross*, 625 F.3d at 813; *Barnhill v. Bank of America, N.A.*, 378 F.Supp.2d 696, 703 fn.2 (D.S.C. 2005).

---

[1] All citations are to the most recent version of the U.S. Code unless otherwise noted.

15 U.S.C. § 1681t(b)(1)(F) provides that "No requirement or prohibition may be imposed under the laws of any State (1) with respect to any subject matter regulated under . . . section 1681s-2 of this title, relating to the responsibilities of persons who furnish information to consumer reporting agencies."

Section 1682s-2 details the responsibilities of furnishers of information to consumer reporting agencies ("CRAs"). *Id*. at 813. Section 1681s-2(a)(1) provides that "[a] person shall not furnish any information relating to a consumer to any [CRA] if the person knows or has reasonable cause to believe the information is inaccurate." Section 1681s-2(a)(1)(B) mandates that a furnisher not supply information regarding a consumer to a CRA if the consumer notifies the furnisher that the information is inaccurate and the information is actually inaccurate. Section 1681s-2(b) details the duties of furnishers "[a]fter receiving notice . . . of a dispute with regard to the completeness or accuracy of any information provided by a person to a" CRA. "These duties include conducting an investigation into the dispute and correcting any errors discovered with the CRAs." *Ross*, 625 F.3d at 813.

The current form of 15 U.S.C. § 1681h(e) provides that

> Except as provided in sections 1681n and 1681o of this title, no consumer may bring any action or proceeding in the nature of defamation, invasion of privacy, or negligence with respect to the reporting of information against any consumer reporting agency, any user of information, or any person who furnishes information to a consumer reporting agency, based on information disclosed pursuant to section 1681g, 1681h, or 1681m of this title, or based on information disclosed by a user of a consumer report to or for a consumer against whom the user has taken adverse action, based in whole or in part on the report[2] except as to false information furnished with malice or willful intent to injure such consumer.

The Fourth Circuit addressed the issue of preemption of state-law claims in *Ross v. FDIC*, 625 F.3d 808 (4th Cir. 2010). The Court in *Ross* analyzed both preemption statutes at issue in the instant case. The Court proposed that a two-step inquiry is necessary to determine

5

whether § 1681h(e) excepts preemption pursuant to the last clause.  First, the Court must "ask whether the claim falls within the scope of § 1681h(e)."  *Id.* at 814.  Second, the Court must determine whether the complaint adequately alleges malice or willful intent to injure.  *Id.*

## II. ANALYSIS

### A. Madden's Allegations Do Not Fall Within the Scope of §1681(h)(e)

First, § 1681(n) and 1681(o) are inapplicable to the instant case because Madden is seeking to recover under the NCDCA.

Otherwise, to be within the scope of § 1681(b) Madden's claims must be "based on information disclosed pursuant to section 1681g, 1681h, or 1681m . . . or based on information disclosed to or for a consumer against whom the user has taken adverse action, based in whole or in part on the report."  *Ross*, 625 F.3d at 814.  The Court will first address § 1681(g) and (h).  Then the Court will determine whether Madden's claims fall within the scope of § 1681(m).  Finally, the Court will address whether Madden's claims fall within the final clause of § 1681(h)(e).

"Sections 1681g and 1681h . . . apply only to CRAs."  *Id.*  Madden does not allege that GMAC, Real Time, or Countrywide are CRAs; therefore, Madden's claims will not fall within these sections.

The next step is to determine whether Madden's allegations are "based on information disclosed pursuant to section . . . § 1681m."  "Section 1681m applies only to users of consumer reports, a term which includes the person who acquires a consumer credit report from a consumer reporting agency and the ultimate destination of that consumer credit report."  *Edwards v. Santander Consumer USA, Inc.*, 5:10-CV-424-D, 2011 WL 2457498 at *4 (E.D.N.C. June 15, 2011) (citing *Yohay v. City of Alexandria Emps. Credit Union, Inc.,* 827 F.2d 967, 973 (4th Cir.

1987)). § 1681m details the notices a user must provide the consumer if it takes adverse action on the basis of information contained in a consumer report, received from third parties, or from an affiliate. "Through this requirement, Congress sought to promote the rights of consumers by giving them essential information about how their credit report is used, information that they could obtain in no other way." *Barnette v. Brook Road, Inc.*, 457 F. Supp. 2d 647 (E.D. Va. 2006) (quoting *Reynolds v. Hartford Fin. Servs. Group, Inc.*, 435 F.3d 1081, 1091-92 (9th Cir. 2006)). Nowhere in Madden's Complaint is Madden seeking relief based on the notion that the information is contained in a disclosure required by § 1681m. Madden does not allege that Countrywide or GMAC acquired her consumer report. Even though Madden may allege that Real Time was a user (*see* Doc. 1, at ¶¶ 44-45), there are no allegations involving the disclosures it may or may not have given under § 1681m. Therefore, § 1681m is inapplicable to the instant case.

After determining that § 1681m is not implicated, the next step in the § 1681h(e) preemption enquiry is to determine whether the cause of action is "based on information disclosed by a user of a consumer report to or for a consumer against whom the user has taken adverse action[2], based in whole or in part on the report." Given the broad interpretation of user

---

[2] Adverse action has a lengthy definition.
> [T]he term "adverse action" means a denial or revocation of credit, a change in the terms of an existing credit arrangement, or a refusal to grant credit in substantially the amount or on substantially the terms requested. Such term does not include a refusal to extend additional credit under an existing credit arrangement where the applicant is delinquent or otherwise in default, or where such additional credit would exceed a previously established credit limit."

15 U.S.C.A. §§ 1691(d)(6); 1681a(k)(1)(A) (providing that "[t]he term 'adverse action' has the same meaning as in section 1691(d)(6) of this title). Adverse action also means:
> **(i)** a denial or cancellation of, an increase in any charge for, or a reduction or other adverse or unfavorable change in the terms of coverage or amount of, any insurance, existing or applied for, in connection with the underwriting of insurance;
> **(ii)** a denial of employment or any other decision for employment purposes that adversely affects any current or prospective employee;

7

adopted in *Yohay*, this section duplicates § 1681m. *Edwards*, 2011 WL 2457498, at * 4. Again, Madden does not allege that Countrywide or GMAC are users. Further, there are no plausible allegations that Real Time further disclosed the credit reports Madden alleges it pulled. Therefore, Madden's allegations do not fall within the ambit of the last clause in § 1681h(e). Accordingly, the Court need not determine whether Madden's allegations sufficiently allege malice or willful intent.

> B.    The Majority of Madden's Claims are Preempted by § 1681t(b)(1)(F)

Having found § 1681h(e) inapplicable, the next enquiry is whether § 1681t(b)(1)(F) preempts Madden's claims.

All of Madden's allegations with regard to GMAC involve credit reporting. (*See* Doc. 1 ¶ 28, 30-31; 38, 40-42; 50, 67, 69). All of Plaintiffs allegations with regard to Countrywide involve credit reporting. (*See* Doc. 1 ¶ 29-33, 36, 39-40, 43, 46, 49-51, 67, 71). Madden's theory of liability is that GMAC and Countrywide have made numerous and repeated errors in transferring information to CRAs which have damaged her. Many of Madden's allegations involving Real Time entail credit reporting. (*See* Doc. 1, ¶¶ 27, 30-34, 36, 38, 40, 46, 51, 67, 69, 71). However, Madden also claims that Real Time "pulled Plaintiff's consumer credit report without a permissible purpose" several times in order to aid in collection. (Doc. 1, ¶ 44-45). As in *Ross*, "to the extent her claims rely on [GMAC, Countrywide, and Real Time's] reporting of false credit information, they are preempted by 15 U.S.C. § 1681t(b)(1)(F)." *Ross*, 625 F.3d at

---

> **(iii)** a denial or cancellation of, an increase in any charge for, or any other adverse or unfavorable change in the terms of, any license or benefit described in section 1681b(a)(3)(D) of this title; and
> **(iv)** an action taken or determination that is--
> > **(I)** made in connection with an application that was made by, or a transaction that was initiated by, any consumer, or in connection with a review of an account under section 1681b(a)(3)(F)(ii) of this title; and
> > **(II)** adverse to the interests of the consumer.

15 U.S.C. § 1681a(k)(1)(B). In addition, the Court finds that the Plaintiff has not adequately alleged that Real Time took adverse action.

817. Madden "would be attempting to use the NCDCA as a "requirement or prohibition" of North Carolina law concerning conduct "regulated under section 1681s–2 ... relating to the responsibilities of persons who furnish information to consumer reporting agencies." *Id.* (quoting 15 U.S.C. § 1681t(b)(1)(F)). Therefore, all of Maddens claims against GMAC[3] and Countrywide are dismissed because they are preempted by the FCRA. Further, all claims against Real Time except those involving allegations for impermissible credit pulls are dismissed because they are preempted by the FCRA.

### C. Madden's Remaining NCDCA Claim Against Real Time is Preempted by § 1681t(a)

The FCRA's original preemption provision will prevent Madden from pursuing a claim against Real Time. 15 U.S.C. § 1681t(a) provides, in pertinent part, that it preempts state laws "to the extent that those laws are inconsistent with any provision of this subchapter." The FCRA has provisions governing permissible purposes for pulling consumer reports. "The FCRA allows access to a consumer's credit report only under specific circumstances where a permissible purpose exists." *Capetta v. GC Services Ltd. Partnership*, 654 F. Supp. 2d 453, 457 (E.D. Va. 2009) (quoting 15 U.S.C. § 1681b(a)). Section § 1681(f) provides that

> A person shall not use or obtain a consumer report for any purpose unless (1) the consumer report is obtained for a purpose for which the consumer report is authorized to be furnished under this section; and (2) the purpose is certified in accordance with section 1681e of this title by a prospective user of the report through a general or specific certification.

The FCRA imposes liability upon a person who willfully or negligently obtains a consumer report for an impermissible purpose. 15 U.S.C. §§ 1681n(a); 1681o. "'Permissible purposes' are defined by statute and include approximately ten listed permissible purposes." *King v. Equable Ascent Fin., LLC*, No. 1:12-CV-443, 2013 WL 2474377 at *2 (M.D.N.C. June 10, 2013) (citing 15 U.S.C. § 1681b(a)). A relevant permissible purpose includes a person who "intends to use the

---
[3] As stated below, any claim against GMAC based on pre-petition conduct is STAYED.

9

information in connection with a credit transaction involving the consumer on whom the information is to be furnished and involving the extension of credit to, or review or collection of an account of, the consumer." 15 U.S.C.A. § 1681b(a)(3)(A).

Here, Madden alleges that she defaulted on her accounts with her creditors. (Doc. 1, ¶ 16-18); *see King*, 2013 WL 2474377 at *3 (dismissing claim under 12(b)(6), in part, because Plaintiff "d[id] not, for example, allege that he had no delinquent accounts."). Madden further alleges that Real Time "purchased the non-performing loan" from another creditor. (Doc. 1, ¶ 32). Madden then alleges that "Experian permitted Real Time to pull Plaintiff's consumer credit report without a permissible purpose . . . so Real Time could monitor Plaintiff's credit-seeking efforts in order to facilitate it in its deceptive and misleading debt collection efforts." (Doc. 1, ¶ 44). Madden cannot satisfy the requirements of *Twombly* by utilizing conclusory statements such as "without a permissible purpose" and "deceptive and misleading" to survive a motion to dismiss. Madden's allegations reveal Real Time pulled the credit report "in order to facilitate . . . debt collection efforts." Therefore, Madden's Complaint plainly reveals a permissible purpose. Section 1681t(a) mandates that Madden may not attempt to use state laws like the NCDCA to create inconsistent standards with the FCRA. Therefore, Madden's claim against Real Time under the NCDCA is dismissed.

### D. AUTOMATIC STAY

"Pursuant to 11 U.S.C.A. § 362(a), the filing of a Chapter 11 bankruptcy petition automatically stays all proceedings against the bankruptcy debtor and all actions to obtain possession of or to exercise control over property of the bankruptcy estate." *Kreisler v. Goldberg*, 478 F.3d 209, 212-13 (4th Cir. 2007). Specifically, "[s]ection 362(a)(1) Chapter 11 of the Bankruptcy Code stays 'the commencement or continuation ... of a judicial ... action or

proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title.'" *Id*. (quoting 11 U.S.C.A. § 362(a)(1)).

Defendant GMAC filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code on May 14, 2012 in the United States Bankruptcy Court for the Southern District of New York. (Doc. 8); (Doc. 10-1, 3 n.1). On July 13, 2012, the Bankruptcy Court entered a final supplemental order granting, in part, GMAC's motion for limited relief from the automatic stay. (Doc. 8-1). However, the Bankruptcy Court's order does not permit Madden to continue prosecuting her claims for pre-petition conduct. (Doc. 8-1, ¶ 14). To the extent that Madden's claims are for pre-petition conduct, they are therefore stayed.

**IT IS, THEREFORE, ORDERED THAT**

(1) GMAC's Motion to Dismiss be **GRANTED** as to post-petition conduct;

(2) Madden's claim against GMAC involving pre-petition conduct be **STAYED** pursuant to 11 U.S.C. § 362;

(3) Real Time's Motion to Dismiss be **GRANTED**; and

(4) Countrywide's Motion for Judgment on the Pleadings be **GRANTED**.

Signed: September 23, 2014

Richard L. Voorhees
United States District Judge